thank you your honor Alexander Alexander Prieto for the appellants and I would like to reserve four minutes of time for rebuttal. Can you speak up please? Yes I'm sorry. Thank you this is Alexander Prieto for the appellants and I would like to reserve four minutes of time for rebuttal. This this is a case where a preliminary injunction is necessary to prevent severe irreparable harm. The denial of emergency SNAP benefits that about 1 million California 1 million of California's poorest families need to avoid going hungry during the unprecedented pandemic that the country is now facing. Now the first preliminary injunction factor the likelihood of success on the merits involves a pure question of law a straight question of statutory interpretation that this court considers de novo and that question really boils down to this. Who did Congress intend to benefit when it wrote this statute providing emergency allotments to address temporary food needs? Did Congress intend to benefit all SNAP households including those with the lowest incomes or as USDA intends did it intend to benefit only a subset of households those with relatively higher incomes while completely denying emergency aid to the lowest income households solely because those households already receive the maximum non-emergency benefit? The statutory language is clear and unambiguous on this point and allows only one answer. Congress intended these benefits to be available to all families and all SNAP households. First there's a phrase that Congress used to describe who it intended to provide these benefits to households participating in the SNAP program that phrase unambiguously includes all SNAP households without any exceptions. Well but the I mean the the exception you know as the district in the district court's view comes from the limiting phrase not greater than the applicable maximum monthly allotment and why why isn't the best reading of that phrase to apply the rule of the last antecedent and say you know that we're Congress is not creating emergency allotments not greater than the maximum it's addressing temporary food needs not greater than the maximum so for so it only applies when people have you know had food needs below the maximum they got brought up to their temporary need you know up to the maximum. Well the the phrase temporary food needs and the context of an emergency shows that the needs Congress is addressing are necessarily needs above and beyond the needs addressed by the regular SNAP benefit. So if you if you apply the rule of the last antecedent and say okay this statute is concerned with temporary food needs and the measure of those temporary food needs is that they cannot be greater than the maximum regular allotment the the the value of those food needs is the up to the full amount of the maximum allotment it's not the difference between the maximum allotment and the amount the household receives that's the phrase that's the never appears in the statute so the limiting phrase cannot apply to that that quantity I'm not sure I understand that because why it seems like a and and I take your point that we don't have this phrase elsewhere to draw on other other meanings of it but it seems like just thinking about what that phrase could mean like a permissible understanding of it to say you normally I need x but I have a temporary need for some amount that is greater than x and you know what Congress is saying here under the government's reading is we're addressing temporary needs but only up to the maximum so you're suggesting that the word temporary the temporary need is only the the increase but it seems permissible to read it as the temporary need is your need during this temporary period you know your total need during the temporary period why isn't that permissible the the the temporary need uh it now I think just take a step back we need to understand that the the amount that SNAP normally provides to all households is is the same amount every household receives uh an amount that is sufficient to bring that household up to the the maximum allotment for that household size whether it's strict for the lowest income families they get that amount strictly through the SNAP benefit when it is for someone with higher income they get that amount through a combination of their imputed contribution and the SNAP benefit that they receive but everyone is raised to the same baseline level by the by regular SNAP benefits therefore a temporary need during an emergency is necessarily something that gives a family an increase above that baseline level so under the government's interpretation are you all there council try i'm sorry i did not understand that answer everybody is brought up regardless of their income or contribution the same amount yes um the the reason i say that is because the um there's there's a maximum regular SNAP benefit right uh maximum yes a maximum regular in the maximum correct uh people get less than the maximum because they're the income available to them plus uh the benefit that they get equals the maximum okay so everyone uh is raised to that same baseline maximum whether it's it's it's through their own funds combined with SNAP or with just the SNAP benefit well everybody doesn't get the same amount of SNAP benefit no no they don't okay but they're all considered to have the same need need they're all considered to need the same amount in order to uh purchase food and and and the SNAP benefits raise everybody to that same amount um so temporary food need is necessarily something that that is uh above that baseline well you would be better off if the if they had used the word all before the phrase households participating in SNAP but they didn't use that word uh they didn't use all households participating in SNAP no but at the same time they didn't provide they didn't include any exceptions to that they didn't say all household they didn't say households participating in SNAP except for those receiving the maximum regular benefit and they didn't use any language that distinguishes between households based on the the amount of on their income the statute never refers to any of those characteristics so applying uh so excluding people from receiving the benefit based on those characteristics essentially adds it's adding an exception to the statute that congress didn't write you're adding an exception to the statute that congress didn't write aren't you you're inserting all in order to make your argument flow the the argument doesn't uh require all uh it it it it it simply looks at what um congress said about the households who are eligible and looks at did it in did it put any exceptions uh on those households and the answer is no um could you address the the government's argument based on the cares act i mean because that's uh um you know we have this other statute passed just a few days later and um you know the government says that the amount of money appropriated there sort of makes sense in terms of its understanding of how this is supposed to work but would be you know seriously inadequate uh under your understanding of how it's supposed to work and so um you know that enactment suggests that you know congress had in mind um usda's view what's your answer to that yes usda's argument is based uh you know solely on its evidence that it presented that a a member uh that usda provided some estimate of of what it thought its interpretation would cost to a member of congressional staff there's usda hasn't presented any evidence that that that estimate was ever brought before congress uh say in a committee report and it hasn't presented any evidence that that evidence was in fact ever brought to the attention of any member of congress and the case cases are clear that a communication to a congressional staff that never makes it to congress is not considered legislative history it's not something that could have had any influence on a congressional vote so it can't be used to interpret a a statute why i mean the the provision of the appropriation um refers to um it says to be allocated as the secretary deems necessary should cost or participation exceed budget estimates which does suggest a certain level of attentiveness on the part of congress to what the usda's cost estimates are doesn't it but there there there's no there's no evidence that um congress was aware of usda's cost estimates and the the also that that that that phrase when it's talking about cost estimates it's not just talking about estimates uh for these emergency allotments because that that that was also that out that appropriation was also for regular uh snap benefits so that's also referring to the the estimates of regular snap benefits which which were known you're down to about two minutes 30 seconds do you want to reserve yes i'll reserve the remainder of my time thank you mr handle morning your honors may i please record josh handle from the united states department of agriculture handle i cannot hear you all right i'm sorry i'll try to speak up judge here we go how about that better all right as broad segments of the national economy were shutting down at the outside of the pandemic congress gave usda flexibility to adjust certain income reporting requirements and to otherwise address temporary food needs under the statutory cap on monthly benefits for snap households in states where both federal and state disaster declarations had issued usda approached that scenario the same way it has when other disasters have brought local and state economies to a sudden halt by temporarily providing every snap household with the full cost of the thrifty food plan for its household size without enforcing the standard 30 net income offset usda then communicated that approach to congress which promptly appropriated an amount consistent with the agency's interpretation of the statute so at a bare minimum usda's reading of section 2302 reflects a reasonable interpretation of the statutory language that is consistent with long-standing agency practice and with congress's appropriation in the companion bill enacted nine days later so where is that in the record i'm sorry your honor which part of that no the communication of congress oh sure um so i i believe we um uh we discussed that in our um summary judgment briefing below i believe it was in um one of the declarations um candidly your honor we went into greater detail about this in the district court proceedings in the eastern district of pennsylvania because the um judge young in in those proceedings had asked for a little bit more um information and detail on the iterative process between usda and the congressional committee i do not recall whether any of those supplemental declarations made it into the record below um as part of the summary judgment briefing i know they did not make it in as part of this appeal because um obviously this appeal moved very quickly after um judge gilliam had issued the order denying the preliminary injunction um i'm even even if it's in a declaration i mean that's an unusual sort of legislative history isn't it i mean we don't have anything in a committee report or sort of any formal statement from congress or anything other than you know someone at usda saying you know this is what i told some member of a congressional staff i mean that we don't normally rely on that sort of thing in interpreting a statute do we no you don't uh judge miller you're absolutely right um i would point out that these coronavirus relief acts did not follow the typical uh course for legislation there was not extensive committee debate and hearings and reports and things like that i mean you had the family's first act that was enacted on march 18th 2020 and the cares act the the companion piece of legislation that was enacted nine days later so you're right that um we normally look to as kind of the formal indicia of uh legislative history are um somewhat sparse in in this situation where you were dealing with congress responding to a crisis scenario so there's no indication really in the record and it's not really your fault given the emergency situation in congress even if it were aware of the amount uh really was aware of the assumptions that you might make as asserted in this case and i i say that because i'm familiar with the judiciary's response to congressional requests the cares act we just had come up with the estimates on a very very quick basis um so i mean i guess my point is i'm not sure how much weight we can put on it and i'm sure perhaps judge miller's concerned that if we uh if we get down in the analysis of legislative history um so chief judge thomas i i completely understand that concern i um uh you know i i don't want to kind of get out over my skis in terms of what's reflected in the record um i i can represent to the court that alongside the um the the cost estimate that of um usda's approach um that reflected its its topping off interpretation of um section 2302 but but again um because i uh because nothing like that was submitted alongside our briefs in this case and because you know even taking that email as a given we can't point to um uh you know a certain piece of evidence that that um that approach was then communicated to an actual member of congress i i don't want to you know over promise on that front um but i do know and i'm and i'm not faulting you for that i'm just trying to clarify where we are can you tell me what the status of the gilliam largest litigation is absolutely um so judge young in the eastern district of pennsylvania um entered uh an order granting the plaintiff's motion for a preliminary injunction that covered pennsylvania's requests for emergency allotments um usda then that was on september 11th i believe shortly thereafter usda filed a motion for a stay pending appeal and also a motion for clarification because pennsylvania came in with um a request not only for enhanced emergency allotments going forward starting with um the month of october but also for retroactive allotments back to um the enactment of the family's first act in march and the retroactive allotments piece of that alone would have come to i believe almost half a billion dollars which would have um which would rapidly deplete usda's remaining fiscal year 2020 funding for um for any sort of snap allotments emergency or otherwise so we're in the process of first clarifying in the district court what the scope of the preliminary injunction is and then appealing um both uh you know the first uh a stay and then the actual merits of the preliminary injunction order to the third circuit so if i understand the import of gilliam here it only affects pennsylvania so it's not a nationwide injunction uh two you haven't appealed yet but plan to appeal that decision is that right both of those are correct yes yes so gilliam at best is persuasive authority not binding authority on anyone right that's that's absolutely right and um you know we have a number of reasons that we don't consider it all that persuasive but certainly you are not um bound by by what judge young uh found in in gilliam um and i do want to um i'm sorry was pennsylvania a party to that litigation uh they were not your honor um but i do want to you know kind of start with um the plain text of this statute because i think we have uh very strong arguments just on the language and applying standard grammatical rules and interpretive canons to the language here as judge gilliam did below the best reading of section 2302 is a direction to usda to address quote temporary food needs not greater than the applicable maximum monthly allotment for the household size end quote and that reading then raises the question of what qualifies as a temporary food need because um as i believe my friend acknowledged section 2302 of the families first act does not define that term and to answer that question i needs in the statutory framework underlying the snap program which brings us directly to the thrifty food plan provision 7 usc section 2012 u where congress established the thrifty food plan as the statutory definition of the cost of the diet required to feed a family for one month and that figure is the north star of the snap program among other things it serves as the disaster scenarios and it defines the ceiling on food needs and thus the maximum monthly allotment for every household in the contiguous 48 states and the district of columbia notwithstanding pronounced real world differences in food costs availability and general cost of living between those areas so under the food nutrition act every household in the contiguous 48 states and dc has a standard presumed food need equal to the cost of the thrifty food plan minus 30 of the household's net income and when congress instructed the secretary to address temporary food needs that could be up to the full maximum monthly allotment or in other words up to the full cost of the thrifty food plan he reasonably understood congress to be authorizing him to temporarily bring every snap household up to the full cost of the thrifty food plan through emergency allotments as usda does in other disaster settings now plaintiffs contend that uh this court should ignore all of that underlying programmatic framework and instead read section 2302 as an across the board boost in every snap hole excuse me in every snap households benefits but when congress wants to enact a temporary across the board increase in snap benefits it does so by explicitly targeting the thrifty food plan amount that's what congress did in the recovery act of 2009 which instructed usda to temporarily calculate monthly snap benefits for all households using 113.6 percent of the thrifty food plan and earlier this year the house of would have temporarily increased the value of snap benefits for all snap households to 115 percent of the value of the thrifty food plan tellingly congress did not do that in the families first act it didn't touch the thrifty food plan it didn't touch the maximum monthly allotment as judge gilliam noted in denying a preliminary injunction section 2302 referenced those familiar statutory terms but did not raise their amounts and that's not to say that congress couldn't have taken a novel approach and provided monthly benefits that surpassed the maximum monthly allotment without appending a multiplier to the thrifty food plan as it always has in the past but if that's what congress had been aiming at there was a very straightforward way to do so they could have just moved the not greater than language so that it immediately followed and modified emergency allotments rather than temporary food needs in other words the statute would direct the secretary to provide emergency allotments not greater than the applicable maximum monthly allotment for the household size to households participating in the supplemental nutrition assistance program and in that case there would be very little doubt that congress wanted to make the emergency allotments themselves equivalent to the maximum monthly allotment but congress didn't write that statute instead it tethered households temporary food needs to the maximum monthly allotment while keeping fixed the statutory definition of a household standard presumed food needs which is the cost of the thrifty food plan minus 30 of net household income so usda reasonably understood that in light of pandemic related economic disruption households could have temporary food needs up to the full cost of the thrifty food plan because they are unable to cover their standard personal income contribution okay your reading has the result that the as your friend on the other side pointed out that the people who are worst off get nothing but why is that a sensible why is that a sensible way to read the statute and why would congress have wanted to do that sure so um i i absolutely um understand that concern your honor um i think that uh a couple of points on that first of all that's the same way that um that disaster supplemental uh snap benefits operate um under the normal course of of usda practice so um you know usda uses supplemental allotments under its emergency response authority to raise all snap households affected by a federally declared natural disaster up to the full cost of the thrifty food plan without kind of individualized consideration of their ability to continue contributing the the personal income share and just like here households affected by a disaster that were already receiving the full cost of the thrifty food plan before the disaster do not get a boost because their statutorily presumed food need is unchanged and they do not have temporary food needs caused by disaster related economic disruption and i think um it's also helpful to you know perhaps kind of put ourselves back in the mindset of where congress was in march and recall that the families first act was not primarily a poverty relief bill it was designed to maintain to the extent possible the status quo of household financial resources while we paused the economy to grapple with the pandemic so where do you get where do you get that in the legislative history i'm sorry where do you where do you get that in the legislative history so um i again like the legislative history here is is very sparse um i would just point to the surrounding provisions i would point to um the other section of 2302 which is um entirely concerned with um people who are rapidly losing income and are um you know finding it difficult to report that um sudden diminution in household resources to a state agency and congress was specifically concerned with them congress was specifically concerned with um people who were suddenly joining the ranks of the unemployed in section 2301 this was um i i think looking at um section 2302 in the context of its surrounding provisions within the families first act makes clear that congress was trying to do income stabilization here more than any sort of general poverty relief i think the problem with that argument is that it's not contained in the text of 2302a and and at least as i read your brief you're saying really that was the intent of that section and not temporary food needs so the argument would be that you're inserting something into that provision that doesn't exist well your honor um i i think this statute is about usda sending money to households right this is not one of the programs where usda just um directly kind of literally delivers baskets of food so both sides are talking about um money for household food it's just a question of um what that money is is going to deal with whether that money is trying to deal with systemic kind of food supply related issues as plaintiffs have contended or whether that money is trying to um ameliorate uh sudden diminutions in household income from pandemic related shutdowns as usda contends and i think that um you know i i take your point that we don't have a tremendously robust legislative history to rely on here but even if this court determines that the statutory language is susceptible to both constructions to both plaintiffs understanding of what congress was doing and usda's understanding of what congress was doing in this posture usda prevails because plaintiffs have not shown that theirs is the unambiguously correct interpretation so as to justify a mandatory injunction that would upend the status quo at this preliminary stage i see that my time has expired so unless there are further questions i respectfully request you affirm thank you further questions okay rebuttal yes um briefly address the uh in this argument and throughout its brief usda relies on the saying that that congress essentially intended these emergency allotments to function similarly to the benefits that um that it provides under a different statute uh in a different type of disaster setting there's no basis for that because this statute never refers to those the those benefits or that statute or that process further there's no indication that congress was even aware of those administrative practices of usda which are not contained in uh you know a regulation after noticing comment that's not the sort of the thing that courts typically presume an agency to be aware of and even if congress was aware of the disaster uh relief administrative practices under this different statute it used different terms than the terms uh used in usda's uh administrative guidance if it wanted the same thing it would use the same term the term there is supplements the term here is emergency allotments usda's argument really is based it turns entirely on this claim that this statute was solely intended to focus on people who had lost income but that's not the phrase the phrase is temporary food needs not temporary loss of income and with the time that this statute was enacted in the early days of the pandemic it was congress didn't know exactly how covid19 would affect food needs but it was clear that that that something serious was happening that could have profound and possibly unpredictable impacts on on folks needs for food that's why congress set up a statute allowing a process for those needs to be evaluated based on data submitted by the states usda's of the statute and instead tries to substitute a one size fits all approach based on its presumption that this is only about lost income which is not supported by the statute um you know finally just you the council appointed to said greater detail was submitted on the appropriations in the gilliam case uh the court there found no evidence uh that that the estimate had any influence on the interpretation of section 2302a um and i see my time is out uh so i'll take any further questions if you have them i think uh any further questions no well thank you for your argument um thank you both for your arguments i know we didn't get through the many issues that are raised in the briefs but i can assure you we've read them and studied them in some detail so thank you for your succinct presentation of your positions case just argued be submitted for decision and we will be in recess for the morning thank you
judges: Kelly, Thomas, Miller